IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED FOOD and COMMERCIAL
WORKERS UNION, LOCAL 1564,

    Plaintiff,

v.       No. 21-CIV-181

SMITH'S FOOD & DRUG CENTERS, INC.,

    Defendant.

## COMPLAINT TO COMPEL COMPLIANCE WITH ARBITRATION PROCEDURE

NOW COMES Plaintiff, United Food and Commercial Workers Union, Local 1564, by and through its counsel, Youtz & Valdez, P.C. (Shane Youtz, Stephen Curtice and James Montalbano), and for its Complaint against the above named defendant, states as follows:

### I. Introduction

Arbitration of industrial disputes lies at the heart of labor law. In most Collective Bargaining Agreements, the Union agrees to give up the right to strike the Company, and the Company agrees to have an independent arbitrator resolve disputes. In this case, the parties have two outstanding disputes emanating from the relevant collective bargaining agreement (CBA). Under bedrock principles of labor law going back more than half a century, all of those questions regarding the meaning of the collective bargaining agreement are to be determined by an arbitrator.

This Complaint asks this Court to compel the parties to utilize the process to which both agreed in order to resolve that dispute—arbitration. Not only is this what the parties agreed to, but it is compelled by federal law.

## II. Statement of Facts

1. This action arises under, and jurisdiction is conferred on the Court by virtue of, Section 301 of the Labor-Management Relations Act of 1947 (29 USC § 185), referred to as the LMRA. Moreover, this action involves an actual controversy between the parties, and the Court is therefore vested by the provisions of the Declaratory Judgment Act of June 25, 1948, c. 646, 62 Stat. 964, as amended (28 USC §§ 2201, 2202), with power to render declaratory judgment, and grant the other relief requested.

2. Plaintiff United Food and Commercial Workers Union, Local 1564 ("the Union") is the exclusive bargaining representative with respect to wages, hours, and other conditions of employment for employees of Defendant at several of its retail facilities in New Mexico. As such, the Union is a labor organization representing employees in an industry affecting commerce, as defined in Sections 501(1) and (3) and 2(5) of the LMRA (29 USC §§ 142(1) and (3) and 152(5)), and within the meaning of Section 301 of the LMRA (29 USC § 185).

3. The Union maintains its principal offices in Albuquerque, New Mexico, and its authorized officers or agents are engaged in representing or acting for employee members throughout New Mexico within the territorial jurisdiction of the Court.

4. Defendant Smith's Food & Drug Centers, Inc. ("the Company"), is a corporation organized and existing under the laws of the State of Ohio. For all times pertinent hereto, defendant has been authorized to do business and is doing business in the State of New Mexico, within the territorial jurisdiction of the court. Defendant is an employer in an industry affecting commerce, as defined in Sections 501(1) and (3) 2(2) of the LMRA (29 USC §§ 142(1) and (3) and 152(2)), and within the meaning of Section 301 of the LMRA (29 USC § 185).

5. The parties have entered into a series of collective bargaining agreements, which have from time-to-time been extended, with certain modifications, and which are currently in full force and effect. The parties' current collective bargaining agreements ("the Agreements") covering Retail employees (four agreements) and Meat employees (two agreements) are attached hereto as Exhibits A through F and made a part of this complaint. Copies of two Memoranda of Agreement (MOA), which extend and amend all terms of the Agreements that were set to expire in June 2018, are attached hereto as Exhibits G (Retail) and H (Meat) and made a part of this complaint.

6. Exhibits A through D and G cover Retail employees, and all have arbitration clauses and relevant articles that are identical to each other or virtually identical. As appears from each relevant exhibit, Section 15 provides a procedure for binding arbitration in the event agreement cannot be reached on a disputed issue between the parties. The Union further alleges violation of the Retail Agreements under articles and language that are identical to each other or virtually identical across the four Agreements. The four Retail Agreements were all bargained together and subsequently interpreted in the same manner in all regards in the past.

7. Exhibits E, F and H cover Meat employees, and all have arbitration clauses and relevant articles that are identical to each other or virtually identical. As appears from each relevant exhibit, Section 15 provides a procedure for binding arbitration in the event agreement cannot be reached on a disputed issue between the parties. The Union further alleges violation of the Meat Agreements under articles and language that are identical to each other or virtually identical across the four Agreements. The two Meat Agreements were all bargained together and subsequently interpreted in the same manner in all regards in the past.

8. A dispute has arisen for both Retail and Meat employees under the same terms of the Agreements as to whether the Company implemented mandatory COVID-19 testing for all employees while failing to provide the minimum amount of pay as required by the Agreements. Copies of the Grievances are attached hereto as Exhibits I (Retail) and J (Meat). It is the Union's position that a minimum of four (4) hours of pay is required for the Retail agreements and four (4) or six (6) hours of pay is required for the Meat Agreements, but the Company disagrees. Despite efforts, the Union and the Company have not been able to reach an agreement on this overall dispute and, therefore, are required under the terms of the collective bargaining agreement to submit this dispute to arbitration.

9. The Union has made several requests to begin the process of selecting an arbitrator for the Retail dispute and an arbitrator for the Meat dispute, pursuant to Section 15 of the collective bargaining agreements, but the Company has intentionally and willfully refused to submit the two disputes to arbitration. The Company's most recent refusal to arbitrate the dispute is set forth in an email dated January 18, 2021.

10. The Union and the Company have in the past submitted such disputes involving multiple Agreements and the statewide workforce to a single arbitrator for Retail and/or a single arbitrator for Meat.

11. The Company's failure to comply with the Agreement has denied the Union its rights under the collective bargaining agreements to allow an arbitrator to resolve the dispute for Retail and for Meat.

### III.     Legal Argument

12.     Plaintiff hereby incorporates, as if set forth in full below, and realleges each and every statement and allegation contained in the preceding paragraphs.

13.      In 1957, the United States Supreme Court first held that a Union may bring an action under section 301 of the National Labor Relations Act (29 U.S.C. § 185) for specific enforcement of an agreement to arbitrate. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957). The Court held that "the substantive law to apply in suits under Section 301(a) is federal law, which the courts must fashion from the policy of our National Labor Laws." *Id*. at 456.

14.     Following that decision, federal law with very few exceptions requires collective bargaining parties to submit disputes over the interpretation and application of labor agreements to arbitration.  *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960) (known collectively as the "Steelworkers Trilogy"); *see also Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487 (1972) (noting that the separate and threshold question of whether an agreement to arbitrate exists is for the court to decide).

15.     In the application and enforcement of collective bargaining agreements, the Supreme Court has described the grievance-arbitration procedure as being:

> at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content is given to the collective bargaining agreement. …  The grievance procedure is, in other words, a part of the continuous collective bargaining process.

*Warrior & Gulf Navigation Co.*, 363 U.S. at 581.  For that reason, arbitration of a labor dispute will only be denied if it can be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. at 582-83.  "Doubts should be resolved in favor of coverage." *Id*.

16. Federal law is also well-established that procedural issues and defenses arising from the interpretation and application of the contract must be decided by the arbitrator so long as there is a collective bargaining agreement in existence.  *See John Wiley & Sons v. Livingston*, 376 U.S. 543, 557 (1964) (arbitrator must decide whether preliminary steps of grievance procedure have been followed); *Flair Builders, Inc.*, 406 U.S. at 490-92 (defense of laches is for arbitrator to decide).

17. In holding that all questions must be submitted to arbitration, including procedural defenses, the Court set forth the following rule:  "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. at 557.

18. Here, the "subject matter" that the parties have agreed to submit to arbitration involves two grievances outlined in the previous section.  There can be no denying that the subject matter of the grievances validly apply under the Grievance & Arbitration section of the CBAs and shall proceed to two arbitration hearings – one for Retail workers and one for Meat workers.

### PLAINTIFF'S FIRST ALTERNATIVE CAUSE OF ACTION: TO COMPEL COMPLIANCE WITH THE CONTRACT

19. Plaintiff hereby incorporates, as if set forth in full below, and realleges each and every statement and allegation contained in the preceding paragraphs.

6

20. The identified dispute is arbitrable as a matter of right under the provisions of Section 15 of the Agreements, and pursuant to those provisions the Company is bound to arbitrate the dispute upon request by the Union.  The Union has fully complied with all requirements of the section prerequisite to the Company's response, and the Company is in violation of the provisions of the article in refusing to proceed to arbitration.

21. The Company's failure to abide by the provisions of the Agreements has caused resentment among the employees in the bargaining units, and seriously threatens and jeopardizes the amicable relations formerly existing between the parties.  Moreover, the Company's conduct thwarts the peaceful and orderly procedures for settlement of disputes contemplated by and provided for in the Agreement.

22. Plaintiff does not have an adequate remedy at law, because only a judgment declaring that the Defendant is obligated to arbitrate the dispute and specific enforcement of the contractual provisions of the Agreements relative to arbitration will provide the Plaintiff with the relief required under the circumstances.

### PLAINTIFF'S SECOND ALTERNATIVE CAUSE OF ACTION: FOR DECLARATORY RELIEF AND DAMAGES FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT

23. Plaintiff hereby incorporates, as if set forth in full below, and realleges each and every statement and allegation contained in all previous paragraphs.

24. As a direct and proximate result of the Defendant's failure to abide by the provisions of the Agreements, employees may have suffered lost wages, overtime pay and benefits, with interest, attributable to those hours of work for which the Company has mandated COVID-19 vaccinations, in violation of the Agreements.

### IV.     Relief Sought

**WHEREFORE, Plaintiff requests:**

A. With respect to Plaintiff's First Alternative Cause of Action:

    1. The Court enter a judgment declaring that Defendant is obligated to respond to the Union's request for arbitration and proceed, without delay, to arbitration under the provisions of Section 15 of the Agreements, and that Defendant has breached its obligation in failing and refusing to do so;

    2. The Court order Defendant to comply with the Agreements regarding the arbitration of the dispute, as required by the provisions of Section 15;

    3. The court award Plaintiff costs and reasonable attorney fees incurred in this action; and

    4. Such other and further relief as may be just and proper in the premises; or

B. With respect to Plaintiff's Second Alternative Cause of Action (For Declaratory Relief and Damages for Breach of Collective Bargaining Agreement):

    1. The Court enter a judgment declaring that Defendant breached the Agreements by ignoring the provisions of Section 15;

    2. The Court award "make whole" damages against the Defendant for its breaches of the Agreements, calculated and fashioned so as to make whole all bargaining unit employees deprived of wages and benefits, lost as a result of said breach;

    3. The Court award Plaintiff its costs and reasonable attorney fees incurred in this action; and

      4.      Such other and further relief as may be just and proper in the premises.

Dated:     March 1, 2021                    Respectfully submitted,

**YOUTZ & VALDEZ, P.C.**

    */s/ James A. Montalbano*
Shane C. Youtz
shane@youtzvaldez.com
Stephen Curtice
stephen@youtzvaldez.com
James Montalbano
james@youtzvaldez.com
900 Gold Avenue S.W.
Albuquerque, New Mexico 87102
(505) 244-1200 – Telephone

*Counsel for Plaintiff, the United Food & Commercial Workers, Local 1564*