# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED FOOD and COMMERCIAL WORKERS UNION,
LOCAL 1564,

        Plaintiff,

  v.                                                                                               No. 1:21-cv-00181-KWR-JFR

SMITH'S FOOD AND DRUG CENTERS, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** comes before the Court upon Defendant Smith's Food and Drug Centers, Inc.'s Motion to Dismiss, filed on March 29, 2021. **Doc. 6**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is **WELL-TAKEN** and therefore is **GRANTED**.

## BACKGROUND

This case arises from a dispute relating to Defendant's implementation of mandatory COVID-19 testing for all its employees and the alleged failure to provide the minimum payment required by a series of collectively bargained agreements. **Compl., ¶¶ 5, 8**.

Plaintiff is the sole bargaining representative with respect to wages, hours, and other conditions of employment for Defendant's employees at several of its facilities in New Mexico. *Id.*, **¶ 2**. The parties have entered into collective bargaining agreements covering Retail and Meat employees, four agreements for Retail and two for Meat[1]. *Id.*, **¶ 5.**

---

[1] Plaintiff attached the Agreements to its Complaint, noting that Exhibits A-D, and G cover Retail employees and Exhibits E, F and H address Meat employees.

Each of these agreements contains a section (Section 15) governing the procedure for binding arbitration should the parties fail to resolve a dispute. *Id.*, ¶ 9.[2] Plaintiff alleges that the relevant sections for Retail and Meat agreements are "identical to each other or virtually identical" and that these respective agreements "were all bargained together and subsequently interpreted in the same manner in all regards in the past." *Id.*, ¶¶ 6-7.

Plaintiff alleges that it made several requests to initiate the selection of arbitrators for both the Retail and Meat disputes, "pursuant to Section 15 of the collective bargaining agreements," but that Defendant "refused to submit the two disputes to arbitrations." *Id.*, ¶ 9. Plaintiff alleges that, in the past, the parties have submitted disputes arising from multiple agreements relating to the "statewide workforce" to a single arbitrator for Retail and a single arbitrator for Meat. *Id.*, ¶ 10.

Plaintiff advanced two causes of action: (1) to compel Defendant to proceed with arbitration[3] and (2) for declaratory relief and damages for Defendant's breach of the collective bargaining agreements. *Id.*, at 6-7.

## Legal Standard

**Rule 12(b)(6) Motion to Dismiss**

---

[2] The agreements, which are nearly identical, provide the following under Section 15 "Grievance and Arbitration": "The Union or any employee in the Bargaining Unit who has any dispute or disagreement of any kind or character arising out of or in any way involving the interpretation or application of this Agreement, shall submit such dispute or disagreement for resolution under the procedures and in the manner set forth in this Section." See, e.g. **Doc. 2-1, Ex. A § 15.1.** The section then provides the process for discussing disputes, the method for selecting arbitrators if the dispute remains unresolved, and limitations upon the arbitrator's authority with respect to the interpretation of the relevant agreement. See **§§ 15.2-15.6.** The Court has not located any provisions within the agreements regarding an intent to arbitrate the issue of arbitrability.

[3] Plaintiff states that "[it] does not have an adequate remedy at law, because only a judgment declaring that the Defendant is obligated to arbitrate the dispute and specific enforcement of the contractual provisions of the Agreements relative to arbitration will provide the Plaintiff with the relief required under the circumstances." **Compl., ¶ 22.**

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the Complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556); see also *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d

1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id*. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Defendant asserts that it has no legal obligation to arbitrate these matters together under one arbitrator for Retail and one for Meat, and thus, the case should be dismissed. **Doc. 6 at 1.** The Court agrees.

I. **The Agreements Do Not Require Consolidated Arbitration of Disputes Sharing the Same or Similar Subject Matter .**

The parties do not dispute that the six agreements, four for Retail employees and two for Meat employees, contain arbitration clauses that are nearly identical or that the agreements require resolution of disputed matters through arbitration. Plaintiff alleges that these agreements were bargained for collectively "and subsequently interpreted in the same manner in all regards in the past." **Doc. 12 at 3.** Plaintiff alleges that a dispute has arisen with respect to whether Defendant provided the minimum pay required when implementing mandatory COVID-19 testing for its employees. *Id.* Plaintiff frames the issue as two disputes, "one common to Retail" employees and "one common to Meat" employees, to be submitted to two arbitrators, and claims that Defendant has refused to do so, "citing the need for six separate arbitration hearings – all to decide the same issue on the same contract language covering the same classification of employees." *Id.* **at 3-5.** Plaintiff claims that, under similar circumstances in the past, the parties have submitted such disputes to a single arbitrator for Retail "and/or" for Meat. *Id.* **at 4.**

Defendant acknowledges that the language of the agreements are the same but notes the agreements limit the application of the grievance and arbitration procedures to each individual

agreement.[4] **Doc. 6 at 4.** Defendant argues that each agreement has its own method for selecting an arbitrator "*under that particular contract*." ***Id*.** (emphasis in original). Defendant also cites to language limiting the authority of the arbitrator chosen under each agreement to an interpretation of that particular agreement only.[5] ***Id*. at 4-5.**

Plaintiff responds that there is nothing within the agreements prohibiting one arbitrator from considering this, which it posits is comprised of "the same set of facts based on the same contract language," as opposed to six different arbitrations "to resolve a singular dispute that applies equally to all Retail or Meat workers throughout the state of New Mexico." **Doc. 12 at 5-6.**

Plaintiff's arguments fall short of the mark and are insufficient to defeat the motion to dismiss. Accepting the allegations of the Complaint as true, the fact that the agreements were negotiated at the same time, or that Defendant may have previously consented to submit an issue involving multiple Retail or Meat departments to a sole arbitrator, does not equate to a binding legal requirement to do so now. Markedly, Plaintiff has neither cited any legal support for its position nor pointed to any provision within the agreements that contemplate a consolidation procedure. Plaintiff cites only to general law "that requires collective bargaining parties to submit disputes over the interpretation and application of labor agreements to arbitration." ***Id*. at 4.** The Court notes that Defendant does not dispute this general rule and asserts that it did not refuse to arbitrate the issues, but rather it rejected Plaintiff's demand to a consolidation while offering to

---

[4] See e.g. Exs. A-F, § 15.1 "The Union [Plaintiff] or any employee in the Bargaining Unit who has any dispute or disagreement of any kind or character arising out of or in any way involving the interpretation or application of *this Agreement*, shall submit such dispute or disagreement for resolution under the procedures and in the manner set forth *in this Section*."

[5] *See e.g.,* Exs. A-F, § 15.3 "The decision of the arbitrator shall be final and binding upon each party; however, the arbitrator shall not have the power to add to, subtract from or in any way modify the terms of this Agreement, and shall limit his decision strictly to an interpretation of the language of this Agreement."

proceed with selecting arbitrators "for each bargaining unit" separately. **Doc. 6 at 1-2; Ex. 1.**[6] [7] Plaintiff's argument that submitting what appears to be a statewide, "singular issue", governed by identical procedures in agreements with the same or very similar language, to six arbitrations rather than two would be inefficient, or "folly" as Plaintiff puts it, does not overcome the contractual language at hand. **Doc. 12 at 5-6.**

The Court rejects Plaintiff's efforts to frame this as a "procedural issue" appropriately resolved by the selected arbitrator. *Id.* **at 5** (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) ("Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.")). The Court notes that nothing in the record indicates that the parties have "clearly and unmistakably" expressed an intent to arbitrate the issue of arbitrability, and therefore the Court may appropriately consider the question. *See, e.g., Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1287 (10th Cir. 2017) (finding generally that the question of arbitrability is for the court to decide, unless the parties clearly and unmistakably expressed intent to arbitrate arbitrability.). The Court agrees with Defendant that the issue here pertains to the scope of what the arbitration agreement covers and is thus within the purview of

---

[6] Defendant's Exhibit 1 is an email communication between counsel referring to the two grievances filed by Plaintiff, one for "all the meat bargaining units…[and] all the clerk bargaining units." In the email defense counsel states that it is Defendant's position that the agreements do not provide for consolidated arbitration governing all of these "various bargaining units" and that therefore Defendant will not select one arbitrator for Retail and one for Meat. However, counsel states that Defendant is willing to continue to arbitration under the following circumstances: "If the union still wants to arbitrate the issues raised in each of these grievances for every bargaining unit, we would be glad to pick arbitrators for each bargaining unit. Those, however, would be separate selections for each bargaining unit."

[7] Defendant notes that Plaintiff references this email in the Complaint and relies on it for its central contention that Defendant has repeatedly refused to arbitrate. (Compl. ¶ 9.) Therefore, the Court finds that including the attachment does not necessitate conversion of the motion to dismiss to one for summary judgment. *See, e.g.,* J*acobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("In addition to the complaint, the district court may consider [in a motion to dismiss] documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."); *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1217-18 (D.N.M. 2013)(permitting, on a motion to dismiss, consideration of electronic mail transmissions referenced in the complaint as "documents referred to in the complaint," which are "central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge)."

this Court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002) (…"[I]n the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (internal citation omitted) (emphasis in original); *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc.*, 406 U.S. 487, 491 (1972) ("…[T]he scope of the arbitration clause, remains a matter for judicial decision."). The issue here is whether six separate collective bargaining agreements have compulsory provisions requiring the consolidation of the dispute at hand. A plain reading of the agreements makes it clear that they do not. Accordingly, dismissal is appropriate.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED.**

**THEREFORE, IT IS ORDERED** that Defendant's Motion to Dismiss (**Doc. 6**) is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order.

A separate judgment will be entered.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS
UNITED STATES DISTRICT JUDGE**